IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLOUD SATCHEL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-941-SLR |
| | ) | Civ. No. 13-942-SLR |
| AMAZON.COM, INC., | ) | |
| BARNES & NOBLE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Stamatios Stamoulis, Esquire and Richard C. Weinblatt, Esquire of Stamoulis & Weinblatt LLC, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Anthony G. Beasley, Esquire, David Swenson, Esquire, and Peter Thomas, Esquire of Farney Daniels PC.

Steven, J. Balick, Esquire, Lauren E. Maguire, Esquire and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendant Amazon.com, Inc. Of Counsel for Defendant Amazon.com, Inc.: Abby M. Mollen, Esquire, Adam K. Mortara, Esquire, Mark S. Ouweleen, Esquire, and Sharon R. Desh, Esquire of Bartlit Beck Herman Pelnchar & Scott LLP.

Philip A. Rovner, Esquire and Jonathan A. Choa, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant Barnes & Noble, Inc. Of Counsel for Defendant Barns & Noble, Inc.: Ali R. Sharifahmadian, Esquire, James S. Blackburn, Esquire, John E. Nilsson, Esquire, Matthew M. Wolf, Esquire, and Seth I. Heller, Esquire of Arnold & Porter LLP.

**MEMORANDUM OPINION**

Dated: December 18, 2014
Wilmington, Delaware

*[signature]*
**ROBINSON, District Judge**

## I. INTRODUCTION

On May 24, 2013, plaintiff Cloud Satchel ("plaintiff") instituted suit against defendant Amazon.com, Inc. ("Amazon") and defendant Barnes & Noble, Inc. ("Barnes & Noble") (collectively, "defendants"), alleging infringement of U.S. Patent Nos. 5,862,321 ("the '321 patent") and 6,144,997 ("the '997 patent"). (D.I. 1)[1] On July 29, 2013, Amazon answered and asserted the affirmative defenses of non-infringement, invalidity, constitutional limitation of damages, and waiver, laches and/or estoppel. (D.I. 10) On the same date, Barnes & Noble answered and asserted the affirmative defenses of failure to state a claim, invalidity, non-infringement, waiver, acquiescence and/or consent, laches, estoppel, unclean hands, statutory bar to damages, no injunctive relief, mitigation of damages, and lack of intent. (D.I. 8) Barnes & Noble also asserted counterclaims for non-infringement and invalidity. (*Id.*)

Although the parties have submitted competing claim construction briefs, the court has not yet issued a decision on claim construction.[2] The defendants sought and obtained leave to file a joint motion for summary judgment of invalidity pursuant to 35 U.S.C. § 101. (D.I. 61) The joint motion for summary judgment of invalidity is presently pending before the court. (D.I. 82) The court has jurisdiction pursuant to 28 U.S.C. §§

---

[1]Document references are to civil action Civ. No. 13-941-SLR (naming Amazon as defendant) unless otherwise noted.

[2]In *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, the Federal Circuit held that "claim construction is not an inviolable prerequisite to a validity determination under § 101." 687 F.3d. 1266, 1273 (Fed. Cir. 2012). In the present case, the court does not find that claim construction would alter the outcome of the court's analysis even if the court were to wholly embrace plaintiff's proposed claim constructions.

1331 and 1338(a).

## II. BACKGROUND

### A. The Parties

Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware.

Amazon is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Seattle, Washington. Amazon is the world's leading online retailer and pioneered the eReader, Kindle®.

Barnes & Noble is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, New York. Barnes & Noble is the nation's largest retail bookseller and a leading retailer of content, digital media and educational products. In 2009, it launched the NOOK® line of eReaders and tablets that allow users to buy and read eBooks and other digital content.

### B. Technology Overview

The '321 patent, titled "System and Method For Accessing And Distributing Electronic Documents," was filed on June 21, 1995 and issued on January 19, 1999. The '997 patent, titled "System and Method For Accessing And Distributing Electronic Documents," was filed on October 28, 1998 and issued on November 7, 2000. The patents share a specification.[3]

The asserted patents acknowledge that the state of the art at the time of filing encompassed storing electronic documents on handheld computers, "e.g. the Apple®

---

[3]Specification references are to the '321 patent unless otherwise noted.

2

Newton," and transferring electronic documents from one portable computer to another. ('321 patent, col. 2:22-24) However, the patents describe various deficiencies with the current technology, including "very slow" transfer of documents between machines and difficulty storing "large numbers of electronic documents" on portable computers. (*Id.* at col. 2:22-35)

The patents are directed to systems, devices, and methods for enabling the transmission and storage of document references or "tokens," each of which is associated with an electronic document stored in a database. This enables mobile users to access all of their electronic documents without being limited by the memory available on a mobile device. (*Id.* at col. 3:36-37) The electronic document references, which identify electronic documents stored in a database, can be passed back and forth between the central database and the portable device, or between the portable device and other devices. (*Id.* at col. 3:56-59) A device can use the electronic document reference to request delivery of the full electronic document from the database. (*Id.* at col. 3:40-43, 4:57-58, 9:10-18)

## III. STANDARDS OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact

cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

4

Id. at 249-50 (internal citations omitted); see also Celotex Corp. v. Catrett, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### B. Invalidity

The standard of proof to establish the invalidity of a patent is "clear and convincing evidence." Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1058 (Fed. Cir. 2004); see also, Ultramercial, Inc. v. Hulu, LLC, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013), vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC, —— U.S. ——, 134 S.Ct. 2870 (2014). Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law in establishing the validity of the patent. CLS Bank Int'l v. Alice Corp. Pty. Ltd., 717 F.3d 1269, 1277 (Fed. Cir. 2013), aff'd, Alice Corp. Pty. Ltd. v. CLS Bank Int'l, — U.S. —, 134 S.Ct. 2347 (2014); In re Bilski, 545 F.3d 943, 950 (Fed. Cir. 2008) (citing In re Comiskey, 499 F.3d 1365, 1371 (Fed. Cir. 2007)) ("Bilski I"). Section 101 provides that patentable subject matter extends to four broad categories, including: "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; see also Bilski v. Kappos, 561 U.S. 593, 601 (2010) (" Bilski II "); Diamond v. Chakrabarty, 447 U.S. 303, 308 (1980). A "process" is statutorily defined as a "process, art or method, and includes a new use of a known process, machine manufacture, composition of matter, or material." 35 U.S.C. § 100(b). The Supreme Court has explained:

> A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.

*Diamond v. Diehr*, 450 U.S. 175, 182–83 (1981) (internal quotations omitted).

The Supreme Court recognizes three "fundamental principle" exceptions to the Patent Act's subject matter eligibility requirements: "laws of nature, physical phenomena, and abstract ideas." *Bilski II*, 561 U.S. at 601. The Supreme Court has held that "[t]he concepts covered by these exceptions are 'part of the storehouse of knowledge of all men ... free to all men and reserved exclusively to none.'" *Bilski II*, 561 U.S. at 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). "[T]he concern that drives this exclusionary principle is one of pre-emption," that is, "'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Alice*, 134 S.Ct. at 2354 (citing *Bilski II*, 561 U.S. at 611-12 and *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. —, 132 S.Ct. 1289, 1301 (2012)).

Although a fundamental principle cannot be patented, the Supreme Court has held that "an **application** of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection," so long as that application would not preempt substantially all uses of the fundamental principle. *Bilski*

6

*II*, 561 U.S. at 612 (quoting *Diehr*, 450 U.S. at 187) (internal quotations omitted); *Bilski I*, 545 F.3d at 954. The Supreme Court recently reiterated the

> framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "'inventive concept'"—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Alice Corp.*, 134 S.Ct. at 2355 (citing *Mayo*, 132 S.Ct. at 1294, 1296-98).[4] "[T]o transform an unpatentable law of nature into a patent-eligible **application** of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Mayo*, 132 S.Ct. at 1294 (citing *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972)). It is insufficient to add steps which "consist of well-understood, routine, conventional activity," if such steps, "when viewed as a whole, add nothing significant beyond the sum of their parts taken separately." *Id*. at 1298. "Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable

---

[4]The machine-or-transformation test still may provide a "useful clue" in the second step of the *Alice* framework. *Ultramercial, Inc. v. Hulu, LLC*, Civ. No. 2010–1544, 2014 WL 5904902, at *6 (Fed. Cir. November 14, 2014) (citing *Bilski II*, 561 U.S. at 604 and *Bancorp Servs., L.L.C., v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). A claimed process can be patent-eligible under § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, *Bilski II*, 561 U.S. 593.

law of nature into a patent-eligible application of such a law." *Id.* (citations omitted). Also, the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Bilski II*, 561 U.S. at 610-11 (citation omitted). For instance, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S.Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* (citations omitted).

The court finds the comparison of *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012), to *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), instructive. In *Bancorp*, where the asserted patents disclosed "specific formulae for determining the values required to manage a stable value protected life insurance policy," the district court granted summary judgment of invalidity under § 101. *Bancorp*, 687 F.3d at 1270. Under the machine prong of the machine or transformation test, the district court found that "the specified computer components are no more than objects on which the claimed methods operate, and that the central processor is nothing more than a general purpose computer programmed in an unspecified manner." *Id.* at 1273. In affirming the district court's findings, the Federal Circuit explained that

> the use of a computer in an otherwise patent-ineligible
> process for no more than its most basic function - making

8

> calculations or computations - fails to circumvent the prohibition against patenting abstract ideas and mental processes. As we have explained, "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).
> To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.

*Id.* at 1278. Ultimately, the Federal Circuit concluded that "[t]he computer required by some of Bancorp's claims is employed only for its most basic function, the performance of repetitive calculations, and as such does not impose meaningful limits on the scope of those claims." *Id.* at 1278.

In contrast to *Bancorp*, the Federal Circuit in *SiRF* found that a GPS receiver was "integral" to the claims at issue and, therefore, the machine or transformation test was satisfied. *SiRF*, 601 F.3d at 1332. As in *Bancorp*, the *SiRF* Court emphasized that a machine will only "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *Id.* at 1333. After noting how the GPS receiver was specifically involved in each step of the method, the Court concluded that "the use of [the] GPS receiver is essential to the operation of the claimed methods." *Id.*

In sum, although it is "clear that computer-based programming constitutes patentable subject matter so long as the basic requirements of [35 U.S.C.] § 101 are

met," *AT&T*, 172 F.3d at 1360, the requirements of § 101 as applied to this area of technology have been a moving target, from the complete rejection of patentability for computer programs[5] to the much broader enunciation of the test in *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), *abrogated by In re Bilski*, 545 F.3d 943., that is, "a computer-implemented invention was considered patent-eligible so long as it produced a 'useful, concrete and tangible result.'" *DDR Holdings, LLC v. Hotels.Com, L.P.*, Civ. No. 2013–1505, 2014 WL 6845152, at *10 (Fed. Cir. Dec. 5, 2014). As instructed by the Federal Circuit in *DDR Holdings,* the Court's most recent attempt to bring clarity to this area of the law: (1) "recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible," *id.* at *9; (2) "mathematical algorithms, including those executed on a generic computer, are abstract ideas," *id.*; (3) "some fundamental economic and conventional business practices are also abstract ideas," *id.*; and (4) general use of the Internet "to perform an abstract business practice (with insignificant added activity)" does not pass muster under § 101, *id.* at *12. In order for claims addressing "Internet-centric challenges" to be patent eligible,[6] the claims must do more than

> recite a commonplace business method aimed at processing
> business information, applying a known business process to

---

[5]*See, e.g.,* 33 Fed. Reg. 15581, 15609-10 (1968). Indeed, in his dissent in *Diamond v. Diehr*, 450 U.S. 175 (1981), Justice Stevens's solution was to declare all computer-based programming unpatentable. *Id.* at 219.

[6]Although the court understands that the advent of the Internet inspired countless inventive ways of accomplishing routine tasks better, faster, cheaper – indeed, both the PTO and the Federal Circuit considered such ingenuity sufficiently inventive under § 101 to be patent eligible – apparently such is not the case under the current legal reasoning.

10

> the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations, such as the claims in *Alice, Ultramercial, buySAFE, Accenture,* and *Bancorp.*

*Id.* (citing *Alice,* 134 S.Ct. at 2359; *Ultramercial,* 2014 WL 5904902, at *5, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013); *Bancorp,* 687 F.3d at 1278).

## IV. DISCUSSION

Defendants allege that the asserted claims[7] are drawn to unpatentable subject matter under 35 U.S.C. § 101. Claim 1 of the '321 patent, which is representative of all three independent claims, discloses:

> 1. A distributed system for accessing and distributing electronic documents using electronic document references, the distributed system comprising:
>
> a) a database of electronic documents and electronic document references stored in a first memory having a first capacity, each electronic document having an associated document reference identifying a location of the electronic document in the first memory, each electronic document having a first memory requirement for storage greater than a second memory requirement for storage of the associated

---

[7]Plaintiff asserts independent claims 1 and 15 and dependent claims 5, 7, 8 and 17 of the '321 patent, and independent claim 1 and dependent claims 4, 15 and 16 of the '997. Defendants concede, for purposes of this motion, that claims 1 and 15 of the '321 patent and claim 1 of the '997 patent are drawn to an apparatus. (D.I. 83 at 6 n.4) The fact that the claims are drawn to an apparatus rather than a method does not impact the court's analysis, as the Supreme Court in *Alice* treated method and system claims under the same analytical framework, explaining that "method claims recite the abstract idea implemented on a generic computer [while] the system claims recite a handful of generic computer components configured to implement the same idea." 134 S.Ct. at 2360.

11

electronic document reference;

b) a distributed document handling subsystem coupled to the database, the document handling subsystem including a transceiver for transmitting an electronic document reference without its associated electronic document at a first location and receiving the electronic document reference without its associated electronic document at a second location, the distributed document handling subsystem responding to receipt of the electronic document reference by producing a copy of the associated electronic document at a third location;

c) a portable electronic document reference transport device for transporting the electronic document reference without its associated electronic document, the portable electronic document reference transport device being physically separate from the first memory and the distributed document handling subsystem, the portable electronic document reference transport device including a second memory for storing the electronic document reference without its associated electronic document, the second memory having a capacity significantly less than the capacity of the first memory, the portable electronic document reference transport device including a transceiver for receiving the electronic document reference without its associated electronic document at the first location and transmitting the electronic document reference without its associated electronic document at the second location.

('321 patent, col. 11:39-12:11)

Applying the analytical framework of *Alice*, the court first "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts," namely, laws of nature, natural phenomena, and abstract ideas. 134 S. Ct. at 2354-55. In *Alice*, the Supreme Court found that the claims were drawn to the patent-ineligible abstract idea of "intermediated settlement," which was also a "fundamental economic practice." *Id.* at 2356. In *Bilski II*, the Supreme Court held that the claims involved were drawn to the patent-ineligible abstract idea of "hedging, or protecting against risk,"

12

which was a "fundamental economic practice." *Id.* at 611. In each of these cases, the claims described more than the central idea put forth by the Supreme Court. For example, in *Bilski II*, claim 1 described "a series of steps instructing how to hedge risk." *Bilski II*, 561 U.S. at 599.

Defendants at bar allege that the patents "are drawn to the abstract principle of cataloguing documents to facilitate their retrieval from storage," a principle that has been in existence for "[n]early two millennia." (D.I. 83 at 8) Plaintiff responds that defendants have "greatly oversimplified" the claims, arguing that although claim 1 of the '321 patent does facilitate the "identification and retrieval of documents from storage," it nonetheless "does so in a specific manner." (D.I. 86 at 9-10) Plaintiff points to the fact that the portable devices have memory capacities "significantly smaller than that of a centralized database," as well as the fact that the devices communicate through a "document handling subsystem." Such limitations serve to "improve the functioning of the computer[s]" that comprise the claimed systems. (*Id.* at 10) Plaintiff further contends that the claims describe inventive applications of "storage and retrieval of electronic documents" in addition to implementing the abstract concept of "cataloguing." (*Id.* at 11)

As explained by the Supreme Court in *Bilski II*, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." 561 U.S. at 610 (internal quotations omitted). An abstract idea is likewise not saved by the mere fact that the claim is lengthy and recites multiple steps. *See Ultramercial, Inc. v. Hulu, LLC*, 2014 WL 5904902, at *4

(Fed. Cir. Nov. 14, 2014) (finding that a length claim with eleven steps is nonetheless drawn to the abstract idea of "using advertising as an exchange or currency"). Moreover, "any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis." *Id.*

Here, the parties agree that the claims facilitate the "identification and retrieval of documents from storage." Representative claim 1 of the '321 patent, at its core, describes the implementation of the abstract idea of cataloguing documents to facilitate their retrieval from storage in the field of remote computing. The length or specificity of the asserted claims does not prevent the claims from fundamentally reciting an abstract idea where, as here, the claim language does nothing more than describe the contours of the cataloguing process. Plaintiff's arguments that the claims recite inventive applications of the abstract concept of "storage and retrieval of electronic documents" and that the claims name specific devices are factors more appropriately considered in step two of the *Alice* framework. Therefore, the court concludes that the '321 and '997 patents are drawn to an abstract idea.

Turning to step two of the *Alice* framework, the court examines whether the claims are limited by an "inventive concept" such that "the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355. Defendants argue that the patents are not patent-eligible applications of an abstract principle because the claims merely recite an abstract principle and instruct the public to apply it with a computer. (D.I. 83 at 11) Defendants identify three instances of generic computer implementation: (1) the "portable electronic document reference transport device;" (2) the "electronic document reference;" and (3) the "distributed

14

document subsystem." (*Id.* at 13)

As for the "portable electronic document reference transport device," defendants point to the specification, which states that the claimed device may be "any suitable form of portable computer." ('321 patent, col. 5:51-52) The specification further requires that the portable device contain a "processor," a "solid state memory," and a "transceiver," features defendants allege are present in virtually every computer. (*Id.* at col. 5:29-31, 55-56) Defendants add that the requirement that the memory be "significantly less" than the memory of the networked device is not a true limitation, but is rather is a "trivial and inherent limitation" of the hardware. (D.I. 83 at 14) Defendants analogize the limited memory of the portable device to a library patron's notebook of call numbers, which "takes up considerably less space than the shelves of corresponding books."[8] (*Id.* at 14; D.I. 88 at 4)

With regard to the "electronic reference," defendants cite the description that the reference may appear in "any suitable format to suit a desired application." ('321 patent, col. 4:40-55) Defendants argue that, consistent with the specification, the "distributed document subsystem" is merely a "conventional network" connected to "conventional office devices." (*Id.* at col. 8:1-3) The additional recitation of specific computer components such as a "database," "memory," "transceiver" and "wire-based network," and computer functions such as "storing," "transmitting" and "receiving," are

---

[8]Plaintiff's claim construction arguments are in tension with its § 101 validity arguments in that plaintiff urges a broad reading of the claim terms for claim construction and a narrow reading for validity. For example, plaintiff argues that "significantly less" should be construed as merely "more than a trivial amount less" for purposes of claim construction (D.I. 66 at 21), but emphasizes "significant discrepancies in memory capacity" for purposes of invalidity (D.I. 86 at 10).

incapable of conferring the requisite specificity. (D.I. 83 at 13)[9]

Plaintiff responds that, even if the claims are drawn to an abstract idea, the recited steps of "transmitting" and "receiving" limit the claimed system because these steps were not "routine or conventional practices at the time of invention." (D.I. 86 at 13) Essentially, plaintiff argues that "practicing these limitations permitted the inventors to have a portable device whose memory size was no longer a significant constraint." (D.I. 86 at 13)

Plaintiff is unable to meaningfully address the fact that the specification unambiguously states that the portable electronic reference transport device may be any "suitable" portable computer. ('321 patent, col. 5:51-52) Nor is plaintiff able to address the fact that the specification states that the electronic document reference may appear in "any suitable format" (*Id.* at col. 4:53-56) and the distributed document subsystem consists of purely "conventional" elements connected by a "conventional" network (*Id.* at col. 8:1-3).

Moreover, even the recitation of specific hardware elements such as a "processor," a "solid state memory," and a "transceiver" is insufficient to confer specificity. See *Alice*, 134 S. Ct. at 2360 (finding that the recitation of "specific hardware" consisting of a "data processing system," a "communications controller," and a "data storage unit" were "purely functional generic"). The requirement that the

---

[9]Defendants contend that the limitations present in the dependent claims including a "display unit and a graphical user interface" in claim 7 of the '321 patent, and the "public telephone network" in claim 15 of the '997 patent, merely recite "generic computer components" or "token postsolution components." (D.I. 83 at 14) Plaintiff does not specifically address the dependent claims in its briefing.

portable device have "significantly less" memory than the networked device does not transform the portable device into a special purpose computer, as the requirement that the portable device have less storage capability than the networked device is an inherent limitation of the underlying abstract concept of cataloguing. Accordingly, the court concludes that the claimed computers and hardware elements of the claimed subsystem are generic.

Although the court understands plaintiff's argument that the steps of "transmitting" and "receiving" may not have been conventional practices in the field of computing a the time of invention, these steps nonetheless do nothing more than recite functions that "can be achieved by any general purpose computer without special programming." *Cf. In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) (in analyzing means-plus-function claims, finding that "the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, i.e., a general purpose processor). The court also recognizes that the application of document cataloguing in the realm of portable computing usefully addressed the problem of limited memory space in portable computers. The fact that an abstract idea may be usefully applied, however, is not enough to "transform an unpatentable principle into a patentable process." *Flook*, 437 U.S. at 590 (reasoning that "the Pythagorean theorem would not have been patentable, or partially patentable, because a patent application contained a final step indicating that the formula, when solved, could be usefully applied to existing surveying techniques."). Plaintiff's argument that the claims "improve the functioning of the computer" also falls short, as the patents do not claim an improvement to the computer, but rather describe how to

17

apply the abstract idea of cataloguing to pre-existing, conventional computers. Here, as in *Bancorp*, "without the computer limitations nothing remains in the claims but the abstract idea." *Bancorp*, 687 F.3d 1266 at 1279-80.

The pre-emption inquiry focuses on whether the patent "would risk disproportionately tying up the use of the underlying ideas." *Alice*, 134 S.Ct. at 2354; *Mayo*, 132 S.Ct. at 1294 (holding that "patents [that] would ... disproportionately t[ie] up the use of the underlying natural laws" are invalid for lacking patentable subject matter). Plaintiff argues that the claims at bar do not broadly preempt "cataloguing documents." Instead, plaintiff asserts that the claims only preempt the concept of

> retrieving electronic documents from storage through portable devices with memory capacities that are significantly smaller than that of a centralized database, and where the portable devices communicate not with one another but through a document handling subsystem that facilitates transmission of electronic document references and electronic documents separately from one another in order to capitalize on the significant discrepancies in memory capacity.

(D.I. 86 at 14)

Plaintiff's attempt to limit the scope of preemption by reciting specific computing applications does not disturb the court's conclusion that the patents are directed to an abstract idea. *See Alice*, 134 S. Ct. at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment.") (citations omitted). Allowing the asserted claims to survive would curb any innovation related to computerized cataloguing of documents to facilitate their retrieval from storage, which would monopolize the "abstract idea."

## V. CONCLUSION

For the foregoing reasons, the court grants defendants' joint motion for summary judgment of invalidity. An appropriate order shall issue.